**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN BROADCASTING COMPANIES, INC., )<br><br>*and* )<br><br>BENJAMIN GITTLESON, )<br><br>      Plaintiffs, )<br><br>v. )<br><br>U.S. DEPARTMENT OF THE TREASURY, )<br><br>      Defendant. ) | Civil Action No. 1:20-cv-01568 (CJN) |

<u>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 1

I.       Economic Impact Payments Under the CARES Act ........................................ 1

II.      Plaintiffs' FOIA Request ................................................................................ 2

LEGAL STANDARD......................................................................................................... 3

ARGUMENT ..................................................................................................................... 5

I.       Treasury Properly Withheld Privileged Information Pursuant to FOIA
         Exemption 5 .................................................................................................... 5

         A.       Defendant Properly Withheld Information Protected by the Deliberative
                  Process Privilege ................................................................................ 7

                  i.       Discussions of proposed check contents and logistics.............................. 8

                  ii.      Discussions to develop responses to press inquiries................................. 12

                  iii.     Drafts of an analysis of questions concerning the checks........................ 14

         B.       Defendant Properly Withheld Information Protected by the Attorney-
                  Client Privilege ................................................................................ 15

II.      Defendant Released All Reasonably Segregable, Non-Exempt Information in
         Response to the Request ................................................................................ 19

CONCLUSION.................................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Abtew v. Dep't of Homeland Sec.*,
  808 F.3d 895 (D.C. Cir. 2015) ................................................................... 7

*Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*,
  370 F. Supp. 3d 116 (D.D.C. 2019) .......................................................... 18

*Bloomberg, L.P. v. SEC*,
  357 F. Supp. 2d 156 (D.D.C. 2004) ............................................................ 8

*Brayton v. Off. of the U.S. Trade Rep.*,
  641 F.3d 521 (D.C. Cir. 2011) ................................................................... 4

*Brinton v. Dep't of State*,
  636 F.2d 600 (D.C. Cir. 1980) ................................................................. 14

*CIA v. Sims*,
  471 U.S. 159 (1985) .................................................................................. 5

* *Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ......................................................... *passim*

*Ctr. for Investigative Reporting v. CBP*,
  436 F. Supp. 3d 90 (D.D.C. 2019) ............................................................ 6

*Defs. of Wildlife v. USDA*,
  311 F. Supp. 2d 44 (D.D.C. 2004) ............................................................ 7

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ................................................................................ 7, 11

*Ecological Rights Found. v. EPA*,
  No. 19-cv-980, 2021 WL 535725 (D.D.C. Feb. 13, 2021) ................... 17, 18

*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*,
  384 F. Supp. 2d 100 (D.D.C. 2005) ......................................................... 16

*Fish & Wildlife Serv. v. Sierra Club, Inc.*,
  141 S. Ct. 777 (2021) ................................................................................ 8

*Fisher v. United States*,
  425 U.S. 391 (1976) ................................................................................ 16

*Formaldehyde Inst. v. HHS,*
    889 F.2d 1118 (D.C. Cir. 1989) ................................................................ 5, 8

*Gold Anti-Tr. Action Comm., Inc. v. Bd. of Gov'rs of Fed. Rsrv. Sys.,*
    762 F. Supp. 2d 123 (D.D.C. 2011) ............................................................ 8

*James Madison Project v. CIA,*
    344 F. Supp. 3d 380 (D.D.C. 2018) ............................................................ 4

*Jordan v. Dep't of Justice,*
    591 F.2d 753 (D.C. Cir. 1978) ................................................................ 7, 9

*Juarez v. Dep't of Justice,*
    518 F.3d 54 (D.C. Cir. 2008) .............................................................. 19, 20

*Jud. Watch, Inc. v. Dep't of Def.,*
    245 F. Supp. 3d 19 (D.D.C. 2017) ............................................................ 16

*Jud. Watch, Inc. v. Dep't of Def.,*
    715 F.3d 937 (D.C. Cir. 2013) ............................................................... 4, 5

*Jud. Watch, Inc. v. Dep't of Homeland Sec.,*
    736 F. Supp. 2d 202 (D.D.C. 2010) .......................................................... 12

*Jud. Watch, Inc. v. Dep't of Justice,*
    365 F.3d 1108 (D.C. Cir. 2004) ................................................................. 5

*Jud. Watch, Inc. v. Dep't of the Treasury,*
    796 F. Supp. 2d 13 (D.D.C. 2011) ....................................................... 13, 16

*Jud. Watch, Inc. v. Exp.-Imp. Bank,*
    108 F. Supp. 2d 19 (D.D.C. 2000) ............................................................. 8

*Jud. Watch, Inc. v. U.S. Postal Serv.,*
    297 F. Supp. 2d 252 (D.D.C. 2004) .......................................................... 17

*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009) ................................................................... 7

*Light v. Dep't of Justice,*
    968 F. Supp. 2d 11 (D.D.C. 2013) ............................................................. 4

*Machado Amadis v. Dep't of State,*
    971 F.3d 364 (D.C. Cir. 2020) ......................................................... 8, 9, 12

*Mapother v. Dep't of Justice,*
    3 F.3d 1533 (D.C. Cir. 1993) ........................................................................ 7

*Mead Data Ctr., Inc. v. Dep't of Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ...................................................................... 16

*Mil. Audit Project v. Casey,*
    656 F.2d 724 (D.C. Cir. 1981) ........................................................................ 4

*Murphy v. Tenn. Valley Auth.,*
    571 F. Supp. 502 (D.D.C. 1983) .................................................................... 16

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) .................................................................................. 10, 11

*People for the Am. Way Found. v. Nat'l Park Serv.,*
    503 F. Supp. 2d 284 (D.D.C. 2007) ................................................................ 9

*Petro. Info. Corp. v. Dep't of Interior,*
    976 F.2d 1429 (D.C. Cir. 1992) ...................................................................... 7

*Pfeiffer v. CIA,*
    721 F. Supp. 337 (D.D.C. 1989) ...................................................................... 8

*Protect Democracy Project, Inc. v. Dep't of Def.,*
    320 F. Supp. 3d 162 (D.D.C. 2018) .......................................................... 12, 18

*Reporters Comm. for Freedom of the Press v. FBI,*
    No. 20-cv-5091, 2021 WL 2753938 (D.C. Cir. July 2, 2021) ................. 11, 12

*Rockwell Int'l Corp. v. Dep't of Justice,*
    235 F.3d 598 (D.C. Cir. 2001) ........................................................................ 5

*Rosenberg v. Dep't of Def.,*
    342 F. Supp. 3d 62 (D.D.C. 2018) .................................................................. 6

*Rosenberg v. Dep't of Def.,*
    442 F. Supp. 3d 240 (D.D.C. 2020) ............................................................ 6, 17

*Russell v. Dep't of Air Force,*
    682 F.2d 1045 (D.C. Cir. 1982) .............................................................. 7, 14, 15

*SafeCard Servs., Inc. v. SEC,*
    926 F.2d 1197 (D.C. Cir. 1991) ...................................................................... 5

*Senate of P.R. ex rel. Judiciary Comm. v. Dep't of Justice*,
   823 F.2d 574 (D.C. Cir. 1987) ................................................................................ 7

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ........................................................................... 19

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ............................................................................................. 16

*Vento v. IRS*,
   714 F. Supp. 2d 137 (D.D.C. 2010) ..................................................................... 16

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ............................................................................... 7

**Statutes**

5 U.S.C. § 552 ............................................................................................... *passim*

26 U.S.C. § 6428 ............................................................................................... 1, 2

CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) ......................................... 1

**Rules**

Fed. R. Civ. P. 56 .............................................................................................. 1, 3

LCvR 7 ................................................................................................................. 1

## INTRODUCTION

This case involves a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, submitted by Plaintiffs American Broadcasting Companies, Inc. ("ABC") and Benjamin Gittleson ("Gittleson") (collectively, "Plaintiffs") to Defendant, the U.S. Department of the Treasury ("Treasury"), (the "Request"). The Request sought information related to the Economic Impact Payment checks issued pursuant to the 2020 Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Plaintiffs' challenge to the remaining Exemption 5 withholdings represents the sole issue still requiring resolution.

Treasury hereby moves for summary judgment on those Exemption 5 withholdings. Fed. R. Civ. P. 56(a); LCvR 7(h). In support of this Motion, Treasury proffers the Declaration of Deputy Assistant General Counsel Michelle A. Dickerman ("Dickerman Decl."), which explains the justification for the remaining Exemption 5 withholdings under the deliberative process and attorney-client privileges. This declaration includes an index describing the information withheld in part or in full. Finally, the Dickerman Declaration also demonstrates that Treasury has taken steps to produce all reasonably segregable, non-exempt information in response to the Request. Accordingly, Treasury is entitled to summary judgment.

## BACKGROUND

### I.     Economic Impact Payments Under the CARES Act

Enacted on March 27, 2020, the CARES Act provides for emergency economic assistance and other support in response to the COVID-19 pandemic. Pub. L. No. 116-136, 134 Stat. 281 (2020). Section 2201 of the CARES Act added section 6428 to the Internal Revenue Code, "providing a tax year 2020 credit that will ultimately be claimed or reconciled on a taxpayer's 2020 income tax return." Dickerman Decl. ¶ 3; 26 U.S.C. § 6428. "The CARES Act also provides for an advance of this 2020 tax credit, commonly referred to as 'Economic Impact

1

Payments.'" Dickerman Decl. ¶ 3; 26 U.S.C. § 6428(f). Beginning in April 2020, the Treasury

Department and two of its bureaus, the Internal Revenue Service ("IRS") and the Bureau of the

Fiscal Service ("Fiscal Service"), together "distributed a total of approximately $170 billion in

[Economic Impact Payments] under the CARES Act." Dickerman Decl. ¶ 3.

## II.    Plaintiffs' FOIA Request

Plaintiffs submitted the Request at issue on April 16, 2020. Complaint ("Compl.") ¶¶ 14-

15, ECF No. 1; Dickerman Decl. ¶ 4 & Exhibit ("Ex.") A. Plaintiffs' Request sought "access to

and copies of all e-mail communication, meeting notes, and other relevant records concerning

the decision to print President Donald Trump's name on Economic Impact Payment checks

disseminated to Americans as part of stimulus, or relief, related from the impact of the COVID-

19 pandemic." Complaint ("Compl.") ¶¶ 14-15, ECF No. 1; Dickerman Decl. ¶ 4 & Ex. A. The

Request sought "all records regarding that decision, including but not limited to communications

between Treasury Department officials, Internal Revenue Service officials, and White House

officials." Compl. ¶ 16; Dickerman Decl. ¶ 4. On April 28, 2020, Treasury issued a letter

acknowledging receipt of Plaintiffs' Request. Dickerman Decl. ¶ 6 & Ex. B; Compl. ¶ 21 & Ex.

1. On June 15, 2020, Plaintiffs filed suit. Compl. ¶ 1.

In response to the Request, Treasury has issued a total of five separate productions,

including one discretionary release. Dickerman Decl. ¶ 11. Treasury made the first production on

September 30, 2020, consisting of 388 pages with partial withholdings pursuant to FOIA

Exemption 6. Dickerman Decl. ¶ 11 & Ex. C. On October 30, 2020, Treasury made the second

production of 326 pages, portions of which Treasury withheld pursuant to Exemptions 5 and 6.

Dickerman Decl. ¶ 12 & Ex. D. The third production on December 1, 2020, consisted of 78

pages, portions of which Treasury withheld pursuant to Exemptions 5 and 6. Dickerman Decl.

¶ 13 & Ex. E. Treasury issued the fourth and final production on January 15, 2021, consisting of

61 pages, with partial withholdings pursuant to Exemptions 5 and 6. Dickerman Decl. ¶ 14 & Ex. F. As stated in Treasury's cover letter accompanying this production, at this time Treasury also withheld in full an additional 56 pages pursuant to Exemption 5. Dickerman Decl. ¶ 14 & Ex. F.

After this final production, the parties engaged in discussions to narrow or resolve the issues in dispute. Dickerman Decl. ¶ 15. In the course of these discussions, Treasury provided Plaintiffs a draft index of pages withheld in full pursuant to Exemption 5. *Id.* In the interest of potentially resolving any remaining issues, Treasury subsequently agreed to issue a supplemental production consisting of a discretionary release of certain pages previously withheld in full. *Id.* Thus, on April 30, 2021, Treasury made a voluntary fifth production, consisting of a discretionary release of 16 pages "depicting preliminary draft designs of the Economic Impact Payment checks." *Id.* ¶ 16.

In sum, Treasury produced a total of approximately 873 pages, including 48 pages of documents with partial withholdings, and withheld in full a total of 40 pages. *Id.* ¶¶ 11-16, 25. Treasury withheld exempt information under FOIA Exemptions 5 and 6. *Id.* However, Plaintiffs do not dispute the adequacy of the search, nor do they dispute the propriety of the withholdings pursuant to Exemption 6. *Id.* ¶ 17. Only the remaining withholdings under Exemption 5, including 48 pages of documents partially withheld and 40 pages withheld in full, remain in dispute. Dickerman Decl. ¶¶ 17, 32 & Ex. G (index of Exemption 5 withholdings); Ex. H ("documents reflecting Treasury's final withholdings").

## LEGAL STANDARD

Summary judgment is appropriate whenever the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the court is presented with cross-motions for summary

judgment, it analyzes the underlying facts and inferences in each party's motion in the light most favorable to the non-moving party." *James Madison Project v. CIA*, 344 F. Supp. 3d 380, 386 (D.D.C. 2018). "A dispute is 'genuine' only if a reasonable fact-finder could find for the non-moving party; a fact is 'material' only if it is capable of affecting the outcome of the litigation." *Id.*

Most FOIA cases are appropriately resolved on motions for summary judgment. *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011) (observing that "the vast majority of FOIA cases can be resolved on summary judgment."). To be entitled to summary judgment, Defendant must show "that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013). Defendant bears the burden of justifying the withholding of responsive material, and this Court reviews Defendant's response to the request *de novo*. *See* 5 U.S.C. § 552(a)(4)(B). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible" to the Court. *Jud. Watch, Inc. v. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (citation omitted).

The Court may award summary judgment in a FOIA action solely on the basis of information provided by the agency through a declaration that describes "the documents and the justifications for nondisclosure with reasonably specific detail," that "demonstrate[s] that the information withheld logically falls within the claimed exemption," and that is "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the

existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197,

1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).

## ARGUMENT

### I.     Treasury Properly Withheld Privileged Information Pursuant to FOIA Exemption 5

Treasury has taken steps to ensure the production of all non-exempt records or portions of

records that can be reasonably segregated and withheld only information protected by a FOIA

exemption that cannot be produced without foreseeable harm to the interests protected by that

exemption. Dickerman Decl. ¶ 31. Treasury is therefore entitled to summary judgment.

Although FOIA generally calls for "broad disclosure of Government records," the statute

also recognizes that "public disclosure is not always in the public interest and thus provide[s]

that agency records may be withheld from disclosure under any of the nine exemptions defined

in 5 U.S.C. § 552(b)." *CIA v. Sims*, 471 U.S. 159, 166-67 (1985). As noted above, Defendant's

"justification for invoking a FOIA exemption is sufficient if it appears logical or plausible" to the

court. *Jud. Watch*, 715 F.3d at 941 (per curiam) (citation omitted).

Treasury logically and plausibly applied Exemption 5 to the information in the

challenged withholdings in this case. Exemption 5 generally protects from disclosure "inter-

agency or intra-agency memorandums or letters that would not be available by law to a party . . .

in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). This exemption "encompass[es] the

protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil

discovery context," including the deliberative process and attorney-client privileges. *Rockwell*

*Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001) (quoting *Formaldehyde Inst.*

*v. HHS*, 889 F.2d 1118, 1121 (D.C. Cir. 1989)); *see also Jud. Watch, Inc. v. Dep't of Justice*, 365

F.3d 1108, 1113 (D.C. Cir. 2004).

5

Having logically applied Exemption 5 to the withheld information, Defendant also reasonably determined "that disclosure would harm an interest protected by" that exemption. 5 U.S.C. § 552(a)(8)(A). To "explain how a particular Exemption 5 withholding would harm the agency's deliberative process," the agency "may take a categorical approach – that is, group together like records," so long as it "explain[s] the foreseeable harm of disclosure for each category." *Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 78 (D.D.C. 2018). Moreover, "[t]he degree of detail necessary to substantiate a claim of foreseeable harm is context-specific." *Rosenberg v. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020). Thus, "[i]n some instances, the withheld information may be so obviously sensitive – such as the disclosure of internal deliberations between a high-ranking military commander and senior government officials . . . – that a simple statement illustrating why the privilege applies and identifying the harm likely to result from release 'may be enough.'" *Id.* (quoting *Ctr. for Investigative Reporting v. CBP*, 436 F. Supp. 3d 90, 107 (D.D.C. 2019)).

Applying these principles, Defendant withheld information pursuant to the deliberative process and attorney-client privileges. Dickerman Decl. ¶ 25. These withholdings include: (1) discussions regarding the proposed content of the memo line of the Economic Impact Payment checks as well as logistical issues such as notice, timing, and other related policy decisions; (2) discussions concerning the development of an overall media strategy as well as responses to specific inquiries from the press; (3) draft analysis of potential issues arising from the design of the checks; and (4) confidential attorney-client communications concerning potential legal issues related to the Economic Impact Payment checks. *Id.* To avoid harm to the interests underlying the applicable legal privileges, Defendant reasonably determined not to make a discretionary disclosure of this information. Dickerman Decl. ¶¶ 26-30. Accordingly, Defendant appropriately

6

withheld this information pursuant to Exemption 5. *Larson v. Dep't of State*, 565 F.3d 857, 862

(D.C. Cir. 2009) (quoting *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007)).

### A.    Defendant Properly Withheld Information Protected by the Deliberative Process Privilege

The deliberative process privilege aims "to enhance the quality of agency decisions, by

protecting open and frank discussion among those who make them within the Government."

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (citations

omitted). This privilege "rests on the obvious realization that officials will not communicate

candidly among themselves if each remark is a potential item of discovery and front page news."

*Id.* at 8-9. To that end:

> [t]he three specific policy objectives underlying this privilege are: (1) to encourage
> open, frank discussions on matters of policy between subordinates and superiors;
> (2) to protect against premature disclosure of proposed policies before they are
> finally adopted; and (3) to protect against public confusion that might result from
> disclosure of reasons and rationale that were not in fact ultimately the grounds for
> an agency's action.

*Defs. of Wildlife v. USDA*, 311 F. Supp. 2d 44, 57 (D.D.C. 2004) (citing *Russell v. Dep't of Air*

*Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States Gas Corp. v. Dep't of Energy*, 617

F.2d 854, 866 (D.C. Cir. 1980); *Jordan v. Dep't of Justice*, 591 F.2d 753, 772-73 (D.C. Cir.

1978) (en banc)).

The deliberative process privilege "protects materials that are both predecisional and

deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). "A document is

'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates." *Abtew v.*

*Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (quoting *Senate of P.R. ex rel.*

*Judiciary Comm. v. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987)). Likewise, a document

is pre-decisional if it was "prepared in order to assist an agency decisionmaker in arriving at his

decision." *Petro. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (citation

omitted). "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." *Jud. Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst.*, 889 F.2d at 1123). Accordingly, "even if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process." *Gold Anti-Tr. Action Comm., Inc. v. Bd. of Gov'rs of Fed. Rsrv. Sys.*, 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011) (citation omitted).

A document is deliberative if it "reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866, and was "prepared to help the agency formulate its position," *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021). The deliberative process privilege thus applies broadly to "drafts, recommendations, proposals, and suggestions that reflect the personal opinions of the author rather than the policy of the agency[.]" *Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 168 (D.D.C. 2004).

Finally, when evaluating deliberative-process claims, courts "must give considerable deference to the agency's explanation of its decisional process, due to the agency's expertise in determining what confidentiality is needed to prevent injury to the quality of agency decisions, while the decisionmaking process is in progress." *Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989) (citation omitted).

As described in detail below, Defendant's withholdings under the deliberative process privilege fall into three general categories.

### i.     Discussions of proposed check contents and logistics

The deliberative process privilege promotes the quality of agency decision-making by protecting "debate and candid consideration of alternatives within an agency." *Machado Amadis v.*

*Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (quoting *Jordan*, 591 F.2d at 772). Accordingly, the deliberative process privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States*, 617 F.2d at 866. Indeed, drafts "are commonly found exempt under the deliberative process exemption." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007).

Defendant therefore withheld under the deliberative process privilege discussions involving the proposed content of the memo line of the Economic Impact Payment checks, including the exchange of draft mock-ups of the checks. Dickerman Decl. ¶ 27. The released portions of these discussions demonstrate the deliberative and predecisional nature of the information withheld. For instance, one such email thread involves a request from the Fiscal Service's Office of Legislative and Public Affairs to key personnel in the public affairs and communications offices at Treasury and IRS for "guidance on what the memo line on the paper check will say . . . as the checks could be going out as early as next week." Dickerman Decl. Ex. H at 1-4. Another email from the Fiscal Service's Assistant Commissioner for Payment Management to the Fiscal Assistant Secretary provides "[a]s requested . . . a sample mock-up check" to compare with another draft as well as a bullet list of "[s]ome things to note" when deciding on the design of the checks. *Id.* at 11. Similarly, another email from the Executive Director of the Kansas City Financial Center to the Fiscal Assistant Secretary discussing the check mock-ups notes that "[t]he team is working on preparing a more realistic check." *Id.* at 13-14. Numerous other emails similarly discuss and compare drafts. *See, e.g., id.* at 7-8, 16-34, 44-46. Similarly, Defendant withheld portions of discussions concerning logistical issues related to the issuance of the Economic Impact Payment checks.

Dickerman Decl. ¶ 29. These discussions involve the development of recommendations with respect to notice, timing, and other related policy decisions. *Id.* & Ex. H at 32-34.

The withheld information in this category is deliberative because it consists of the personal recommendations and analysis of various principal members of Treasury staff with respect to issues involved in designing and distributing the checks. Dickerman Decl. ¶ 27. Additionally, these exchanges involve the deliberative consideration and comparison of draft "mock-ups" of potential check designs. *Id.* These discussions are deliberative because they involve the personal recommendations, thoughts, and analysis of various Treasury staff members with respect to various issues involved, and these discussions precede the decision about the design of the checks as well as the actual distribution of the checks. *Id.* ¶¶ 27, 29. These discussions are pre-decisional because they involve the development of options to present to senior officials about possibilities regarding the design of the Economic Impact Payment checks, including the potential contents of the memo line, as well as the logistics for distributing the checks. *Id.* These discussions preceded and informed the decision by the Secretary concerning the design of the checks. *Id.* & Ex. H at 25-26, 47. The withheld portions of discussions about logistics are pre-decisional because they similarly involve discussions among Treasury and Fiscal Service staff to develop recommendations to present to senior agency decision-makers with respect to logistical issues involved in ultimately distributing the checks. Dickerman Decl. ¶ 29.

Defendant reasonably determined not to make a discretionary release of this information because disclosure would foreseeably harm the quality of future agency decision-making on similar urgent matters of widespread interest. *Id.* ¶¶ 27, 29. As noted above, Courts have long recognized that the general purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975), "by protecting

10

open and frank discussion among those who make them within the Government[.]" *Klamath Water Users*, 532 U.S. at 8-9 (citations omitted); *Coastal States*, 617 F.2d at 866 (deliberative process privilege protects "honest and frank communication within the agency"). "[E]xperience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." *Sears*, 421 U.S. at 150-51.

As the Dickerman Declaration and the released portions of the discussions demonstrate, these candid exchanges of options and related considerations played a crucial role in these decision-making processes. *See, e.g.,* Dickerman Decl. ¶¶ 27, 29. "The withheld material generally reflects sensitive deliberations regarding Treasury's policies with respect to the rapid disbursement of billions of dollars of Economic Impact Payments to provide relief to Americans as a result of the global COVID-19 pandemic." *Id.* ¶ 20. These discussions took place in the context of widespread media scrutiny, with the urgent purpose of efficiently designing and issuing the checks, which Treasury in fact began distributing within weeks of the enactment of the CARES Act. *Id.* ¶¶ 3, 27, 29. In light of these circumstances, Treasury determined that disclosure of these discussions would impair the quality of future decision-making by discouraging the full and frank exchange of recommendations and viewpoints among principal members of Treasury staff and to the highest levels of senior agency officials. Dickerman Decl. ¶¶ 21, 27, 29; *Reporters Comm. for Freedom of the Press v. FBI*, No. 20-cv-5091, 2021 WL 2753938, at *14 (D.C. Cir. July 2, 2021) ("The very context and purpose of those communications . . . make the foreseeability of harm manifest."). This type of candid dialogue among staff, exchanging ideas about a full array of options and considerations, is essential to develop the highest-quality recommendations to senior decision-makers at Treasury, particularly with respect to matters affecting millions of Americans. Dickerman

Decl. ¶¶ 21, 27, 29; *Reporters Comm. for Freedom of the Press*, 2021 WL 2753938, at *14*; see also, e.g., Machado Amadis*, 971 F.3d at 371 (agency declaration adequately explained that disclosure "would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and recommendations,' thus impairing 'the forthright internal discussions necessary.'"). The potential for "[s]uch chilling of candid advice is exactly what the privilege seeks to prevent." *Machado Amadis*, 971 F.3d at 371.

### ii.      Discussions to develop responses to press inquiries

The deliberative process privilege protects discussions regarding potential responses to the media. *Reporters Comm. for Freedom of the Press*, 2021 WL 2753938, at *6 (upholding application of Exemption 5 to communications in which "high-ranking officials were debating how to formulate the most appropriate and effective response"). Application of the deliberative process privilege to such discussions is proper because "[r]evealing their contents would expose the process by which agency officials crafted a strategy for responding to the press." *Protect Democracy Project, Inc. v. Dep't of Def.*, 320 F. Supp. 3d 162, 177 (D.D.C. 2018) ("[T]hese sorts of documents reflect deliberation about the decision of how to respond to the press."); *see also Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (upholding application of deliberative process privilege over discussions of how to respond to inquiries from the press).

Accordingly, Treasury withheld information that would reveal ongoing discussions about how to respond to inquiries from members of the press. Dickerman Decl. ¶ 26 & Ex. G. Treasury received numerous media inquiries related to the Economic Impact Payment checks, including questions about timing, the content of the memo line, and the signature on the checks. Dickerman Decl. ¶ 26 & Ex. G In the relevant email chains, staff including principal personnel in the Office of the Assistant Secretary for Public Affairs discussed recommendations and exchanged edits to drafts

12

of proposals for responding to press inquiries. Dickerman Decl. ¶ 26 & Ex. G; *see also, e.g.,*
Dickerman Decl. Ex. H at 5-7. These discussions are entirely intra-agency, with the exception of
one nonetheless intragovernmental exchange between Treasury and White House staff that similarly
concerns the development of a strategy for responding to inquiries from the press. Dickerman Decl.
¶¶ 18, 26, & Ex. H at 37-42. The withheld information is deliberative because it reflects discussions
to develop a strategy for communications with the press, including the exchange of draft responses
to particular inquiries. Dickerman Decl. ¶ 26; *Jud. Watch, Inc. v. Dep't of the Treasury*, 796 F.
Supp. 2d 13, 31 (D.D.C. 2011) (emails "generated as part of a continuous process of agency
decision-making regarding how to respond to such [media] inquiries . . . were thus protected by
the deliberative process privilege."). This information consists of internal discussions among staff
involving their personal analyses and recommendations, rather than the Department's final
determination of how to respond. Dickerman Decl. ¶ 26. Additionally, this information is
deliberative because the purpose of these discussions was to make recommendations to senior
decision-makers, including the Assistant Secretary of the Treasury for Public Affairs. *Id.* The
information is pre-decisional because it precedes the eventual responses and involves preliminary
discussions among staff to develop an eventual media strategy as well as drafts of responses to
specific inquiries. *Id.*

 Defendant determined that a discretionary release of this information would foreseeably
harm the quality of agency decision-making and risk public confusion. *Id.* The withheld information
involves recommendations to senior officials regarding a matter of widespread media interest.
Dickerman Decl. ¶ 26. Thus, disclosure in this context would risk harm to future deliberations by
inhibiting full and frank discussion among Treasury staff. *Id.* Such a chilling effect would impair the
quality of future decision-making by damaging decision-makers' access to candid recommendations

and analysis with respect to media and other inquiries. *Id.* In addition, disclosure of these internal deliberations among agency staff about whether and how to respond to multiple media inquiries would risk public confusion by revealing the personal views of staff that do not necessarily reflect the final position of the agency. *Id.* ¶¶ 22, 26; *see, e.g., Russell*, 682 F.2d at 1048; *Coastal States Gas Corp.*, 617 F.2d at 866. Preserving the ability of agency staff to communicate candidly and avoiding the risk of public confusion are both well-established interests which the deliberative process privilege protects, and are particularly implicated by these documents. *See, e.g.,* Dickerman Decl. ¶¶ 22, 26. Accordingly, the withholdings in this category are more than logical and plausible under a straightforward application of Exemption 5.

### iii.        Drafts of an analysis of questions concerning the checks

Similarly, the deliberative process privilege protects the exchange of drafts of an analysis being prepared for senior decision-makers. As this Circuit has held, "[d]ocuments which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." *Coastal States*, 617 F.2d at 866. Indeed, "[t]here can be no doubt that . . . advice, given in the form of intra-agency memoranda prior to any agency decision on the issues involved, fits exactly within the deliberative-process rationale." *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980).

Defendant thus withheld under the deliberative process privilege draft analysis of various questions concerning the Economic Impact Payment checks. Dickerman Decl. ¶ 28. Staff at Treasury and the Fiscal Service exchanged drafts of an analysis of various potential issues concerning the design and distribution of the checks. *Id.* This information is deliberative because it involves the back-and-forth review and discussion of draft analysis of issues related to the design, content, and distribution of the Economic Impact Payment checks. *Id.* This information is

14

pre-decisional because it involves the exchange of views and recommendations to develop the final analysis presented to senior officials to inform their decision-making regarding the checks. *Id.*

Defendant determined not to make a discretionary release of this information because disclosure would harm the quality of agency decision-making and risk public confusion. *Id.* As discussed at § I.B., *supra*, Treasury received multiple inquiries from the media concerning the Economic Impact Payment checks, demonstrating the significance of internal discussions and widespread interest in the underlying matter. *See also* Dickerman Decl. ¶ 26. Because this category of withheld information involves the back-and-forth consultative review and discussion of drafts of an analysis to be presented to senior officials, disclosure would risk chilling future internal deliberations on similarly high-profile matters. *Id* ¶ 28. The quality of agency decision-making depends upon such candid exchange of recommendations among agency staff. *Id.* Disclosing deliberative discussions revealing individual views and ideas would undermine the willingness of staff to participate in full and frank discussions in the future, particularly with respect to matters that may draw similarly significant media interest. *Id.* Moreover, release of draft analysis on a matter of such widespread interest would risk public confusion about the final position and reasoning of the agency. *Id.*; *see, e.g., Russell*, 682 F.2d at 1048. Accordingly, Defendant properly withheld these discussions involving the drafting of an analysis of potential issues concerning the Economic Impact Payment checks.

> **B.**    **Defendant Properly Withheld Information Protected by the Attorney-Client Privilege**

The attorney-client privilege covers "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). "The privilege

recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also Fisher v. United States*, 425 U.S. 391, 403 (1976) (recognizing that the purpose of the privilege is "to encourage clients to make full disclosure to their attorneys"). "In the FOIA context, the agency is the 'client' and the agency's lawyers are the 'attorneys' for the purposes of attorney-client privilege." *Jud. Watch*, 796 F. Supp. 2d at 33. Exemption 5 incorporates the attorney-client privilege against disclosure because the government "needs the same assurance of confidentiality" as a private party "so it will not be deterred from full and frank communications with its counselors." *Coastal States*, 617 F.2d at 863; *see also Jud. Watch, Inc. v. Dep't of Def.*, 245 F. Supp. 3d 19, 32 (D.D.C. 2017).

Although this privilege fundamentally applies to facts given to an attorney by a client, *see, e.g.*, *Vento v. IRS*, 714 F. Supp. 2d 137, 151 (D.D.C. 2010), it also protects "any opinions given by an attorney to his client based on, and thus reflecting, those facts." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 114 (D.D.C. 2005). Privilege can be inferred where "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States*, 617 F.2d at 863. "The privilege applies to confidential communications made to an attorney by both high-level agency personnel and lower-echelon employees." *Elec. Privacy Info Ctr.*, 384 F. Supp. 2d at 114-15 (citing *Upjohn*, 449 U.S. at 392-97). To that end, circulation of information within an agency to relevant employees does not breach the confidentiality of any legal advice provided by counsel. *See, e.g.*, *Murphy v. Tenn. Valley Auth.*, 571 F. Supp. 502, 506 (D.D.C. 1983).

Here, the information withheld is protected by the attorney-client privilege because it "(1) involves 'confidential communications between an attorney and his client' and (2) relates to 'a

legal matter for which the client has sought professional advice.'" *Jud. Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 267 (D.D.C. 2004). Pursuant to the attorney-client privilege, Defendant withheld information involving requests for legal advice related to the design and issuance of the checks. Dickerman Decl. ¶ 30 & Ex. G at 3-4. For example, these discussions include a request to Treasury attorneys for an analysis of potential legal questions involved in considering options for the Economic Impact Payment checks. *Id.* In performing this analysis, senior Treasury attorneys consulted with an attorney at IRS, as well. *Id.* Accordingly, these communications include an internal email chain among senior attorneys at Treasury and the Fiscal Service, containing legal analysis of potential issues regarding the possible content of the memo line of Economic Impact Payment checks, the signature on the checks, and the related media strategy. *Id.* & Ex. G at 3. These communications also include an email from an IRS attorney to senior attorneys at Treasury providing requested legal analysis of potential issues concerning the contents of the memo line of Economic Impact Payment checks and related proposed documentation. *Id.*

Treasury determined not to make a discretionary release of this information because disclosure would harm Treasury's ability to obtain sound legal advice by chilling intra-agency discussions on issues of law. Dickerman Decl. ¶¶ 21, 27. When the withheld information is "so obviously sensitive," demonstrating the harm that would result from the release of this privileged information becomes relatively straightforward. *Rosenberg*, 442 F. Supp. 3d at 259; *Ecological Rights Found. v. EPA*, No. 19-cv-980, 2021 WL 535725, at *32 (D.D.C. Feb. 13, 2021) ("[T]he agency's burden to demonstrate that harm would result from disclosure may shift depending on the nature of the interests protected by the specific exemption with respect to which a claim of foreseeable harm is made."). Because "[t]he purpose of the attorney-client privilege encompassed by Exemption 5, for example, is to provide an 'assurance of confidentiality' to

17

clients, . . . disclosure of privileged information is a harm in and of itself." *Ecological Rights Found.*, 2021 WL 535725, at *32 (quoting *Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*, 370 F. Supp. 3d 116, 130 (D.D.C. 2019)). Accordingly, "[w]hen invoking the attorney-client privilege, then, an agency likely does not need to reach far beyond the fact of disclosure to show foreseeable harm." *Id.*

Disclosure in this context of either the details of the requests for advice or the advice itself would impair the delivery of fully informed legal advice to Treasury decision-makers in the future. Dickerman Decl. ¶ 24; *Protect Democracy Project*, 320 F. Supp. 3d at 175 ("[C]ourts routinely endorse invocations of attorney-client privilege based on government declarations[.]"). As the Dickerman Declaration explains, Defendant determined that disclosure would hinder the open and frank discussion of "not only facts divulged by government officials to the government's attorneys, but also opinions given by the attorneys based upon and reflecting those facts as well as communications between attorneys that reflect client-supplied information." Dickerman Decl. ¶ 30. The withheld discussions involve confidential requests for advice and responsive legal analysis by senior Treasury attorneys. *Id.* ¶¶ 24, 30. These attorneys conducted this analysis to inform senior decision-makers about potential issues related to the Economic Impact Payment checks. *Id.* ¶ 30. Particularly with respect to such high-profile matters of widespread interest involving decision-making by senior officials, disclosure of such privileged communications would impair the ability of senior Treasury officials to obtain candid legal advice. *Id.* ¶¶ 24, 30. Disclosure might chill the willingness of senior officials to ask sensitive legal questions or to engage in fulsome discussion and analysis of those legal questions. *Id.* Such advice is essential for senior officials to make fully-informed decisions. *Id.* Thus, Defendant properly withheld under Exemption 5 information protected by the attorney-client privilege.

## II.     Defendant Released All Reasonably Segregable, Non-Exempt Information in Response to the Request

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(9). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). And a reviewing court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008).

The Dickerman Declaration demonstrates that Treasury took steps to ensure the release of all reasonably segregable, non-exempt information in response to the Request. Dickerman Decl. ¶ 31 & Ex. G. Treasury produced a total of 873 responsive pages with line-by-line, partial redactions under Exemptions 5 and 6. *Id.* ¶¶ 22-27. This includes the discretionary release of 16 pages originally withheld in full, which Treasury determined it could produce in the interest of potentially resolving any remaining issues in this litigation. *Id.* ¶¶ 15, 17. Treasury determined that the information that remains withheld is either "exempt from disclosure pursuant to a FOIA exemption" and cannot be released without harm to the interests protected by that exemption, or "so intertwined with protected material that segregation was not possible without revealing the underlying protected material." *Id.* ¶ 31. Thus, Treasury is entitled to summary judgment on this issue, as well. *Juarez*, 518 F.3d at 61.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant this motion for summary judgment.

Dated: July 16, 2021                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Acting Assistant Attorney General

                                        ELIZABETH J. SHAPIRO
                                        Deputy Director
                                        Federal Programs Branch


                                         /s/ Amber Richer
                                        AMBER RICHER (CA Bar No. 253918)
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, NW
                                        Washington, D.C. 20530
                                        Tel: (202) 514-3489
                                        Email: amber.richer@usdoj.gov
                                        *Attorneys for Defendant*